UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALEMARIA BLANKENSHIP,

    Plaintiff,                      CIVIL ACTION NO. 13-12547

  v.

                                 DISTRICT JUDGE JULIAN A. COOK
                                 MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION:**

    Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there was substantial evidence on the record that claimant retained the residual functional capacity for a limited range of light work prior to December 31, 2006, when her insured status expired.

**II.  REPORT**

    **A.  Background and Procedural History**

    Plaintiff filed an application for Social Security disability income benefits on January 14, 2010, alleging that she had been disabled and unable to work since December 22, 2006,

at age 50, due to bilateral foot pain[1]. Benefits were denied by the Social Security Administration. A requested de novo hearing was held on September 7, 2010, before Administrative Law Judge (ALJ) Peter N. Dowd. The ALJ subsequently found that the claimant was not entitled to disability benefits because she retained the ability to perform a limited range of light work between December 22, 2006, her alleged onset date of disability, and December 31, 2006, when her insured status expired. The Law Judge restricted claimant to jobs that allowed a sit-stand option, and did not requre the operation of foot controls. In addition, she would not need to crouch, kneel, crawl, or perform any climbing (TR 12-21). The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits prior to December 31, 2006, was supported by substantial evidence on the record.

Claimant was 50 years old at the time her insured status expired in December 2006 (TR 32). She had an 8th grade education, and had been employed as an automobile parts assembler during the relevant past (TR 33-34). As a parts assembler for General Motors, Plaintiff stood for the majority of the workday. She constantly had to handle, grip and manipulate large and small objects. She had to lift about 20 pounds on a regular basis

---

[1] Plaintiff filed a prior application for DIB in May 2002, alleging the same disability as the present application, which was denied by the SSA following an administrative hearing before a Law Judge and not pursued further (TR 12). Consequently, res judicata applies to the determination of Plaintiff's condition through the date of the unchallenged administrative decision (September 2004). Bagby v. Harris, 650 F.2d 836 (6th Cir. 1981), cert. denied 454 U.S. 1087 (1981).

(TR 34). Claimant stopped working in November 2002, due to severe pain in her feet. Plaintiff was granted a disability pension by her employer on November 2, 2002, and she has not attempted to return to work since that time (TR 33-34).

Plaintiff testified that she remained disabled as a result of foot pain, despite undergoing numerous foot surgeries (TR 38). Prior to the expiration of her insured status on December 31 2006, claimant explained that she was unable to walk or remain on her feet for prolonged periods due to severe foot pain (TR 54). Plaintiff remembered that she could stand for perhaps ten minutes at a time, but claimed that she would have been unable to walk from the parking lot to a job site (TR 53). Claimant was able to perform some household chores with the help of her husband, and she remained capable of driving periodically (TR 43, 47).

A Vocational Expert (VE), Judith Findora, classified Plaintiff's past work as light, unskilled activity (TR 63, 147). The witness explained that there would not have been any jobs for claimant to perform during the relevant period if her testimony were fully accepted[2] (TR 68). If she were capable of light work prior to December 31, 2006, there were numerous unskilled general office work, cashier and counter clerk jobs that she could still have performed (TR 64). These jobs allowed a sit-stand option, and did not require the operation of foot controls. She would not have to crouch, kneel, crawl, or climb stairs (TR 63-64).

---

[2] The witness opined that Plaintiff's alleged need to elevate her feet at least a foot off the ground would preclude work activity (TR 68).

3

**B. ALJ Decision**

The Administrative Law Judge found that Plaintiff was impaired prior to December 31, 2006, as a result of degenerative joint disease of the feet, but that she did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's foot problems during the relevant period prevented her from working at jobs requiring prolonged periods of walking or standing. She also could not operate foot controls, and was unable to crouch, kneel, or crawl. The climbing of ropes, stairs, ladders and scaffolding was also restricted. Nevertheless, the ALJ found that Plaintiff retained the residual functional capacity to perform a significant number of light jobs, within those limitations, as identified by the Vocational Expert, prior to December 2006.

**C. Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of

credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that substantial evidence does not exist on the record that she remained capable of performing a limited range of light work activity prior to December 31, 2006. She also argues that the ALJ improperly discounted the disability opinion from her treating doctor. Defendant counters that the claimant retained the residual functional capacity for a reduced range of light work because the objective clinical evidence of record prior to December 2006, did not confirm the disabling nature of her bilateral foot pain.

### D.  Insured Status Requirements for DIB Benefits

A "period of disability" can only commence while an applicant is fully insured. 42 U.S.C. § 416(I)(2). The parties agree that the Plaintiff's insured status for purposes of receiving DIB benefits expired on December 31, 2006, and thus she cannot be found disabled unless she can establish a disability prior to that date. Gibson v. Secretary, 678 F.2d 653, 654

(6th Cir. 1982). Evidence relating to a later time period is only minimally probative, <u>Siterlet v. Secretary</u>, 823 F.2d 918, 920 (6th Cir. 1986), and is only considered to the extent it illuminates claimant's health before the expiration of insured status. <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988). In other words, regardless of the seriousness of her present disability, Plaintiff must prove that she was disabled between December 22, 2006, her alleged onset date of disability, and December 31, 2006, when her insured status expired, in order to be entitled to DIB benefits. <u>Garner v. Heckler</u>, 745 F.2d 383, 390 (6th Cir. 1984).

### E.  Discussion and Analysis

I suggest that substantial evidence exists on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of light work prior to December 31, 2006. The medical evidence, as a whole, fails to provide objective support for Plaintiff's allegations of severe and totally disabling functional limitations stemming from her feet pain.

The medical record disclosed that Plaintiff enjoyed good results from her various foot surgeries. Claimant has undergone numerous operations on her feet since 1997. The surgical procedures included removal of neuroma, resection of calcaneal spurs, posterior tibial nerve decompression bilaterally, and open reduction/internal fixation of the right ankle. All of those operations were performed prior to 2000. In August 2001, claimant underwent a second right tibial nerve decompression. Six months later, in January 2002, she had a decompression of the right medial calcaneal nerve. In September 2002, right tarsal tunnel

decompression was performed (TR 263-265, 267-268, 270-271, 316-322, 328-330, 335-336, 340-343). Following each surgery, claimant was able to return to work.

Plaintiff underwent additional surgical operations on her feet prior to her alleged onset date of disability in December 2006 (TR 243, 258, 335). Following each procedure, claimant admitted that she had not remained bed-ridden, but was able to walk with crutches or other ambulatory aides (TR 174). Plaintiff testified that her ambulatory abilities had not changed since 2006 (TR 53). Significantly, Dr. Keith Daniels, her treating podiatrist, reported in 2011 that claimant had no problems with her gait (TR 286, 291, 294). The fact that Plaintiff remained capable of walking without help shortly after each foot operation, and that she did not suffer any permanent gait disturbances following the numerous surgeries, is, I suggest, inconsistent with allegations that her foot condition had worsened since 2004.

When evaluating Plaintiff's residual physical functional capacity, the Law Judge also took into consideration the opinion of a state agency consultant[3], who concluded that the claimant could perform unskilled work (TR 74-76). In light of that evidence, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent, severe, totally disabling symptoms stemming from her foot pain were not fully credible.

---

[3]Under the regulations, ALJs "must consider findings of State agency medical and psychological consultants," but ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. § 404.1527(f)(2)(I) (2013).

There is on this record no objective medical evidence suggesting that she suffered severe side effects from pain medications, or that she needed to rest frequently throughout the day during the relevant period. The ALJ also took into consideration claimant's objectively proven functional limitations by restricting her to simple, routine jobs that limited prolonged standing or extensive walking. The Law Judge also restricted claimant from jobs that required foot controls (TR 17).

Plaintiff relies heavily upon the fact that Dr. Keith Daniels stated in August 2011, that she was disabled because she could not walk from the parking lot to her workstation (TR 358). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since Dr. Daniels offered little objective evidence during the relevant period to support his August 2011, statement of disability[4], his

---

[4]The ALJ rejected the doctor's disability opinion, setting forth persuasive reasons for doing so (TR 18-19). The ALJ expressed concern about the lack of medical documentation to support the opinion during the relevant period. As the ALJ noted, Plaintiff was able to walk from the parking lot of the hearing center to the hearing itself (TR 18), and went shopping a couple times per month (TR 172). The ALJ reasonably found Plaintiff's ability to walk to the hearing room and regularly shop for groceries contradicted the treating podiatrist's opinion that she could not walk even short distances. The ALJ also found Plaintiff's admission that she only needed ambulatory aids following surgery, and could walk without any gait problems, inconsistent with Dr. Daniel's opinion that she was unable to walk (TR 18). This suggested to the ALJ that the disability statement in August 2011, well after the expiration of insured status, was prepared for the sole purpose of helping the claimant qualify for benefits. Indeed, it appears the doctor's opinion was primarily based on Plaintiff's subjective complaints, rather than the objective medical evidence.

8

opinion need not have been given any special weight. Miller v. Secretary, 843 F.2d 221, 224 (6th Cir. 1988). Under these circumstances, the totality of the evidence must be considered. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

It is the rare and exceptional case in which every piece of evidence points incontrovertibly toward a decision to deny benefits. There is evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fits in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that she could not return to her past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that she had the vocational qualifications to perform alternative jobs in the economy during the relevant period, notwithstanding her various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with claimant's significant impairments, the Vocational Expert testified that there were numerous unskilled general office work, cashier and counter clerk

jobs that she could still have performed prior to December 31, 2006, when her insured status expired (TR 64). These jobs allowed a sit-stand option, did not require the operation of foot controls, and she did not have to crouch, kneel, crawl, or climb stairs/ropes/ladders (TR 63-64). Given the objective clinical findings of the examining physicians of record during the relevant period[5], substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of light work activity.

### F. Conclusions

In sum, I suggest that the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir.

---

[5] After the ALJ issued his decision, Plaintiff submitted to the Appeals Council treatment records from Dr. Daniels for 2006 (TR 360-375). Because Plaintiff never placed this information before the ALJ, it cannot be considered in reviewing his decision. See Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996). Nor has Plaintiff sought a "sentence six" remand to place this new evidence before the ALJ. See 42 U.S.C. § 405(g); Wilson v. Comm'r of Soc. Sec., 280 F. App'x 456, 460 n.2 (6th Cir. 2008). Plaintiff has, I suggest, therefore waived any argument for remand under sentence six.

1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                s/ *Charles E Binder*
                CHARLES E. BINDER
Dated: June 9, 2014                United States Magistrate Judge

11